Good morning. We have one case set for argument this morning. It's 18-11368. It's either Daves or Davies, I'm not sure which, versus Dallas County. May I please the court, Daniel Volchok for the Plaintiffs. Co-counsel, Alec Cara-Consetis, will address the merits of plaintiffs' constitutional claims. I will address the non-merits issues. Starting with the extension. Defendants' younger argument fails for two overarching reasons. One of the prerequisites for extension is present, namely the requirement that there be a quote-unquote adequate opportunity to raise the federal claim in the relevant state court proceedings, the so-called Middlesex facts. Defendants here have never argued through all of their appellate briefings that the including after we argued in our briefing to the panel that it isn't satisfiable. Defendants have thus forfeited any adequate opportunity argument, and that alone is a sufficient basis to reject their younger argument. After all, younger is an affirmative defense, plus they are the appellants on this issue. So they had to come to this court and show that the district court's rejection of their younger argument was wrong, and doing that included showing that all of the prerequisites for younger extension are satisfied. Mr. Volchok, it is my understanding that Moore v. Sims said that the burden is on the plaintiffs to prove no adequate opportunity. Moore v. Sims, U.S. Supreme Court. So Judge Jones, the plaintiffs have never cited that case, but of course I accept the court's representation that that is what Moore stands for, and I'm happy to take on the burden that we have to show no adequate opportunity, because even if, assume there is a forfeiture, and if the court were willing to overlook it, the district court's factual findings establish that there is no adequate opportunity here. The findings establish that people arrested in Dallas County have to wait a week or two, sometimes even months, to raise a federal challenge, or really any challenge, to trial detention. Those findings are on pages 5961 to 5962 of the Record on Appeal. The district court's have not been challenged on appeal, nor could they have been challenged credibly, because they are by a wealth of evidence. Much of that evidence is cataloged in our proposed findings of fact, which starts at page 5913 of the Record on Appeal. Mr. Volchok, let me ask you about this reasonable opportunity and what the record shows. What precisely is the opportunity that a detainee or SD would have, and how far could that detainee go with the challenge before it even got moot, or for some other reason, the proceedings ended? So, indeed, Judge Chapswood, as you suggest, if someone is convicted or acquitted, the challenge gets mooted out. If that gets into circumstances, since we have a class action here under County of Riverside, if the name plaintiff's cases get mooted out nonetheless, the case can continue. But to your question, we know from the Supreme Court's decision in Gerstein v. Pugh that if you have to wait an extended period of time, if you have to undergo an extended period of pretrial detention before challenging pretrial detention, that is not an adequate opportunity. And in fact, this court, in the decision that Gerstein v. Pugh referred to, made the very same point, that if you have to wait and undergo extended periods of pretrial detention, you then have suffered the harm that pretrial detention inflicts. Mr. Volchek, this is Judge Higginson. I guess I've got the same concern, but legally two ways. If I read O'Donnell 1, which it seems to me the panel just accepted on this point, but the O'Donnell 1 panel was very clear that the opportunity to revisit the constitutionality in the bail was waived through habeas. So O'Donnell 1 doesn't legally stand for the proposition. They couldn't challenge it. And the related point, which is how my brain thinks, is the similar challenge to the constitutionality of the Federal Bail Reform Act shot all the way up through the First Circuit to Salerno from a bail hearing deficiency or an attack, right? And we have FRAP 9, and I take it Texas does too. Any defendant who feels they weren't heard in Texas can go right up. Why isn't that opportunity to make the arguments you're making? We know from Supreme Court precedent that the adequate opportunity question is, do you have an adequate opportunity to finally raise the federal claim in the state court proceeding? It's not a question of being able to bring a separate proceeding, habeas or anything else. This court, again, in the decision that Gerstein affirmed, made exactly the same point. And it's an important point. We know that, I'm sorry, Judge Higgins. Well, but no, but it's just, you've answered the first point. I understand that's the way you'd argue, but what about Salerno? I really get stuck on Salerno. The entire array of constitutional attacks were addressed through a pretrial detainee's denied motion for release. Right, and so that was a case, obviously, in the federal system. And we are not, needless to say, that the federal system does not provide an adequate opportunity. Adequate opportunity is obviously fact-specific case-specific. It depends on what opportunities a particular jurisdiction allows. And in Dallas County, that's why I referred to the district court's factual findings. It is the district court's factual findings that really establish the lack of an adequate opportunity here, because you don't have a first appearance before a judicial officer until four to ten days for misdemeanor defendants, two weeks for felony defendants who waive indictment, several months for those who don't waive indictment. And the district court further found expressly that even at the first appearance, judges will not consider a bond reduction or pretrial release. An attorney has to file a motion, and the district court expressly found, again on the pages that I cited earlier, that a hearing in bond... Of course, Mr. Volchak, during the pendency of this case in August of 2018, the Dallas County Commissioners had passed authority to hire more pretrial services people to prescribe an affidavit for every person held to make available defense counsel as needed for every person. And I don't see anything in the district court's findings specifically about that. And Suvi Rainwater, of course, said, well, on its face, the bail schedule is constitutional. Now, irrespective of whether you apply it, I'm just saying that there is an opportunity. So this is an interlocutory appeal, Judge Jones. We are up here on a closed record, and the challenge to the district court's findings by the defendant, is there any basis to overturn the district court's findings, which established no adequate opportunity? This case is certainly going back, if circumstances have changed, if defendants now want to make an argument that there is an adequate opportunity in light of changed circumstances. Sorry, Judge Jones. Tell me about O'Shea v. Littleton and why it doesn't apply. Sure. So this court asked the parties to address O'Shea and Tarter and Wallace v. Kern, all of which held that abstention was required in a case that involves a claim about pretrial release. And I can talk about each case individually, but there are two overarching points that I think show why none of the three cases requires abstention here. So the first point is that O'Shea, Tarter, and Wallace were all just applying younger. None of those cases was creating an additional doctrine, any sort of separate abstention requirement. They were applying younger. So none of them requires abstention for the same reasons I've given, that younger itself doesn't. For example, that there is no adequate opportunity here. The second overarching point is that all three cases predate the Supreme Court's decision in Sprint Communications v. Jacobs, which is the court's most recent developed discussion of younger. And in there, the Supreme Court unanimously made younger a quote-unquote disfavored doctrine. That's the term. No, I take that very, I took that I looked at Wright and Miller on jurisdiction. And I do not see a retreat from the principles of younger, Samuels, Moore, Judy's, Huffman v. Pursue, although Sprint was a civil case. Wright and Miller still goes on for cases, most of which adhere to younger principles. We're talking with Sprint was civil. We're talking, you know, restructuring the state criminal procedures here. Sure. I was addressing your question about O'Shea, Judge Jones, and let me just wrap up this way. The most on point Supreme Court case here, I submit, is Versteen v. Pew, which held that abstention was not the constitutionality of pretrial detention without a particular judicial finding a particular procedural protections. And both of the reasons that Versteen gave for why abstention is not required apply fully here. The first was that the claim was not directed at the state prosecutions as such, but only at the collateral issue of pretrial detention. The second reason was that the relief there could not prejudice the conduct of the trial on the merits. That's footnote nine of Versteen. Both of those reasons apply here and I'll reserve the balance of my time. Thank you. I'm not sure I can pronounce your name correctly. Mr. Kerr? Thank you. Yes. Thank you. Alec Kerr Katanas for the plaintiff. The constitutional dispute in this case is narrow and simple, but it has enormous consequences. We are arguing that the government may not accomplish regulatory preventive pretrial detention without making a sufficiently compelling showing. The other side is arguing that any person after a valid arrest can be detained for the entire duration of the pretrial proceeding solely on the finding of probable cause. That means that the government can affect regulatory pretrial preventive detention of a presumptively innocent person even without making any finding that that detention served any significant government interest. I want to pause for a second right at the beginning to talk about the stakes of this question and how radical a position that is. If there is no federal liberty interest at stake, that means that any state, New York, Illinois, Texas, could tomorrow pass a law saying any person arrested for any offense, a misdemeanor, a felony, must be detained prior to trial. It could remove the state created liberty interest, and federal law would have nothing to say. So there could be, and I just want to note parenthetically, that the Supreme Court has held that the Fourth Amendment's probable cause determination on which defendants rely in this case does not even require an adverse burial hearing. It can be ex-parsent. So someone could have an arrest warrant issued against them, probable cause could be found, and then federal. Yes, Judge Stewart? So the radical nature of defendant's position is that solely based on a probable cause finding, someone can be detained for the entire duration of the pretrial period. That violates multiple Supreme Court precedents and many precedents of this one. I'd like to walk through why. In Salerno, the Supreme Court declared there's a fundamental substantive due process right to fundamental interest in bodily liberty. The Supreme Court has multiple times articulated this. In Zadida, in Pucha, which struck down Louisiana's regulatory detention precisely because it did not require this finding that alternatives were insufficient. I also want to point the court to a couple of decisions that the parties didn't really discuss very much in their brief. One of those is Judge Smith's recent decision for this court, in which it called United States in which Judge Smith considered the circumstances under which a person can be detained based on incapacity to proceed to trial. Judge Smith declared for this court that because the liberty interest in pretrial liberty is so significant, quote, the government must advance a sufficiently compelling interest to justify that detention. Now in that case, in McCown, the government's compelling interest was having a person who's competent to stand trial. And so Judge Smith found that if there is a finding, a substantive determination that someone is lacking in mental capacity, they can be committed for a period of time, quote, necessary, end quote, to determine whether the person's capacity can be restored. Judge Smith relied in McCown on Jackson versus Indiana, the seminal Supreme Court case on this topic, which defendants don't even cite a that when a person, this is a quote, we hold, consequently, that a person charged by state with a criminal offense, who is committed solely on account of his incapacity to be trialed, cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability they will regain competence. In the case, could I just ask a couple of practical questions, and maybe you're not the right person, I've missed my opportunity to ask the practical questions, because my questions are not about whether there's a due process right here, or whether this interest is really important. My questions are, I don't understand practically, how we can either enjoin or declare that a sheriff has to look beyond a valid order. That doesn't, I don't understand because normally, if it was on its face, you would they have to hire some department to do con law or something within the sheriff's office on an expedited basis. Because normally you're protected, even in Frank and all these other cases, if you rely on a facially valid order from a court, if you're a sheriff. So I don't understand that. And I don't understand, are we telling the specific finding in their order? Or we just saying, you have to make this finding as a matter, but you don't have to put it in your order. Because as I understand state court training, that I had the privilege of going to many years ago, you're not told that you have to put everything in your orders, that in fact, you can make a global order as long as you did do the right things. So I don't know if a federal court can tell state court, you must put such and such in your order. So those are just practical questions about how this would possibly work. Yes, Julie. All right. I think that is a very good question. Both questions are good. My colleague is prepared to address the sheriff question, but just in case we run out of time, the short answer is that no one is forcing any sheriff to question the validity, the facial validity of a warrant. All we're saying is that just as the Supreme Court has held in the probable cause context, the sheriff must be given a document that is facially valid. So in the probable cause context, for example, the sheriff is given a warrant, and there's four warrants that are used in every jurisdiction in Texas and throughout the country that says there is probable cause for this detention. All that is being considered in this case is the sheriff must be given a document that says detention is necessary because alternatives are insufficient. So it could be a checkbox, it could be the same thing that already happened, and that is the exact same kind of remedy that is imposed in Durstein and in Riverside. All that's being said to the sheriff is not, you need to second-guess any particular finding that's being made at all. All that is being said is federal law requires a certain substantive standard to be met. So, Chickasen, were you going to say something? I think I called. Apologies. I'll follow up a question, counsel. Maybe the sheriff really has nothing to do with this other than getting handed the facially valid order, as you say. That's correct, and again, my colleague, Mr. Volchek, is prepared to address questions with respect to the sheriff, but I think what's very important is to understand that in the Fourth Amendment context in Durstein and Riverside, the Supreme Court cases, the substantive constitutional standard is probable cause. What the other side is arguing in this case is that such a finding need not be made in the case. So, for example, that is like arguing that someone could obtain a warrant for your house, Judge Wilson, solely by going to a judge and talking about whether probable cause has been met. But the difference here, Mr. Caracasanas, is that I've never seen a case that enjoined a sheriff's department to only arrest people based on facially valid warrants. Certainly under Section 1983, the deputies can be liable if they acted without a facially in, you know, under Franks, without a facially valid warrant, but I haven't seen injunctions that make them subject to federal oversight and what we have here, which is a weekly judicial review by a federal judge of the timeliness of the proceedings. Yes, Judge Jones, I think the short answer to your question is that that is exactly the kind of release that would flow from a Riverside case, that would flow from Durstein, and it's not insensitive. It is exactly the kind of release of the Constitution mandates, and in fact, Judge Sutton's recent unanimous decision in the Sixth Circuit found precisely that. That is precisely an example of the kind of case you're on. Well, that was an ex parte young decision that didn't go to the propriety of an injunction at that point in the case, if I'm not mistaken. Actually, and again, my co-counsel is prepared to address all of these issues. That case precisely was an interlocutory appeal of a preliminary injunction, and it was an injunction directed at the sheriff. Okay, well, we can disagree politely. Would you answer Judge Elrod's second question, which had to do with how you enjoin the magistrate judges? By the way, the district court refused to be granted neither injunctive nor declaratory judgment against any of the judges in this case. Yes, Your Honor, this case is not about enjoining any judge, any judicial officer, to say anything in particular. This case is about articulating what substantive findings must be made before the government may affect the regulatory preventive detention of a presumptively innocent individual. My question is, does the finding have to be on the order, because that would be dictating to the state court the form of its order? Or are you just saying that they have to do this, and you have to, that that's part of the process? But I just don't know if you can dictate the form of an order. I'm sorry, I'm just trying to precise the question as possible. I think the question Your Honor is asking gets to the Matthews v. Eldridge balancing test, and I think the appropriate place to discuss this would be in the district court with an evidentiary record. But I think that order need not require any particular word from a state court, need not order state courts to include anything in their order. The ultimate injunctive relief in this case is simply that people cannot be detained unless that kind of finding was made. The district court, having made that constitutional finding, would be free to take evidence from the parties and to craft an order that is minimally intrusive, that doesn't involve ordering state courts to do anything particular at any particular stage. In O'Donnell 1, for example, this court held that all that need be done is an articulation on an oral record. Counsel, you referred several times to an injunction. What do you make of the language added to 1983 that says, in any action brought against a judicial officer under that act, injunctive relief shall not be granted unless... so it's basically only declaratory judgment if you're dealing with judges. How does that work? We have not sought, nor does the district court order, any injunction against a judicial officer. My colleague, Mr. Volchok, can describe in further detail our position on that, but the same as O'Donnell 1. Any injunctive relief in this case is targeted under Ex parte Young at the sheriff for enforcing orders that violate the Constitution. There is absolutely no enjoining of a judge, and if you look at the legislative history of the Federal Courts Improvement Act in 96, which is all about preventing the payment of the crony fees from judges and all about the dignity of a judge being enjoined, there is no attempt in this case to enjoin a judicial officer. Well, if we decide the sheriff cannot be enjoined for whatever reason, just laying that out as a hypothetical, and if the motion could get his declaratory judgment, obviously there are hurdles to get to that. That's already been discussed. So, the district court should structure just what it is that is the constitutional right, and how it can be satisfied in these proceedings? Yes, Your Honor. The basic point I'm making is that if the court finds, for some reason, that injunctive relief is not appropriate, I think that would be incorrect under Ex parte Young and McNeil and a whole host of other cases. If the court decides that it's not appropriate, the declaratory judgment would be very simple in this case. It would be a declaration of what the contours of the federal substantive right are. Under the Bearden line of cases, and separately under Kucha and Salerno and Zadvida and Jackson vs. Indiana, the Supreme Court has always said that the government must have a compelling interest and that it must demonstrate that alternatives to meet that interest are insufficient. The content of a declaratory judgment could be basically that simple in this case. Yes, Judge Engelhardt, I believe. I'd like to step back a little bit and ask you about the district and county judges in particular. I tell you, you haven't really talked yet about judicial immunity, but I take it that the complaint isn't simply that they have established some type of non-binding schedule for bail bonds. The complaint is in the application by the magistrate judges. Why are the district and county judges acting, I believe they're acting under state law, why are they not immune? Simply, isn't that part of their job is to consider a structure for recommended bail practices that is non-binding on the magistrates as long as they consider each case individually and take evidence? Your Honor, Mr. Volchak is prepared to address that question. I think the short answer to your question is that for a variety of reasons, as stated in our brief, immunity does not apply to these requests for declaratory and injunctive relief. The district court's factual findings were that those judges were controlling the conduct of the magistrate judges, and those factual findings have not been challenged on appeal. So I think that is why... Mr. Krasanich, I emphasize once again, not only did the district court not enjoin any of the judges, and I don't think you really asked for that in your on-bond briefing, although you're entitled to whatever relief I suppose you can support, but that is sort of an anomaly and we're up here on a preliminary injunction, not a preliminary declaratory judgment. Yes, Your Honor, the Supreme Court has said that there is no such thing as preliminary declaratory relief, so we did not seek preliminary declaratory relief. You're right, we are here on a preliminary injunction. The court should be addressing something that hasn't yet been determined by the district court in a final judgment, because we're here on a preliminary injunction in derogatory appeal, right? That's exactly right, Judge Haynes. The preliminary injunction here is very narrowly addressed at... I see my time is up. I can finish responding if the court befits. Yes, briefly. Just to respond to the question about declaratory relief in a preliminary context, because the Supreme Court has said there is no such thing. We sought a preliminary injunction to enjoin rampant constitutional violations that were occurring without any findings whatsoever, where people were being detained for weeks and months without ever even being brought to court. That is the harm we sought to enjoin, and that is the harm that a district court injunction enjoins a sheriff from committing. I reserve my time. Thank you, Mr. Neville. Mr. Revels, you're muted. Thank you, Judge Owen. May it please the court, on behalf of Dallas County, I'd like to begin with discussing the issue that Judge Englehart raised and Judge Jones, the questions that you asked, and that is the county judge immunity from suit in this case that is the same as it is for county, because they all are state officers who are performing judicial roles, who are subject and protected by judicial immunity. In the panel opinion, Dallas County was subject to an argument that the district judges and the county judges are official policymakers, because they established bail guidelines and bail schedules that are only advisory that the magistrates allegedly are applying without regard to their advisory nature, without adherence to Texas state law, and without adherence to federal due process issues. The panel opinion got halfway to where Dallas County asked in connection to from the allegation that they are municipal policymakers. Specifically, the panel correctly held that the district judges are not agents or officers of the county, they are state judicial officers who have geographical jurisdiction. That doesn't make them county officers applying county law. Of course, they apply state law, that is Texas Code of Criminal Procedure 17.015, which sets out a number of factors that Texas judges are supposed to follow in assessing bail. If there's a problem under 17.015, Texas state law provides avenues for correcting that. The problem with the panel opinion is that it was bound by the opinion in O'Donnell 1, which held that unlike district judges, county judges can be municipal officers and municipal policymakers for Monell purposes under section 1983. And honestly, that was just based on a misinterpretation of Texas state law. In the panel argument, Judge Southwick said that we're going to be and the panel opinion gave careful consideration to county judge liability that hesitantly held that O'Donnell 1 was binding on this point. That's why we filed an en banc petition for rehearing. Neither state district judges nor state county judges in Dallas County are municipal policymakers that subject Dallas County or the Dallas County judges to liability against injunctive relief or declaratory relief, and that is based on this circuit's precedent. In Johnson v. Moore, Judge King noted this circuit's precedent collecting cases that municipal judges acting in his or her judicial capacity to enforce state law do not act as municipal officials or lawmakers. And there's two bases for that role isn't policymaking in the same way that legislative policymaking or administrative policymaking may create a basis for section 1983 liability under Monell. The judicial role is protected by judicial immunity, as you pointed out, Judge Inglehart, and judicial immunity is a function of the sovereign's judges. And the second principle that Johnson v. Moore followed is that judges are state officers enforcing state law. There is no such thing as county law, county criminal law, for Dallas County. The distinction that O'Donnell 1 drew between county judges that might have liability under section 1983 was that Johnson v. Moore applied only to individual judges. In O'Donnell, the court said that a group of judges that meet and create uniform rules are doing something that's more like county policy, but that really can't be the law and it isn't the law. The law is that judges who meet together and create uniform rules for their jurisdiction are performing a judicial role. The judicial role isn't limited to sitting on the bench deciding individual cases. It obviously includes the enactment of rules that govern procedure in that jurisdiction. That's what this court held in Davis v. Tarrant County. That's the relevant precedent. The distinction drawn in O'Donnell really falls apart under this court's precedent. And it's a dangerous way to change this court's precedent because it creates an argument in many, many other jurisdictions in Texas, including all the counties that plaintiffs like these have sued in addition to Dallas County, under the theory that county judges are official policymakers. That is not consistent with Texas law, the circuit's law, or really American law for that matter. And we would ask that the court on box correct that and dismiss Dallas County and the county criminal court judges who are statutory judges. As this court has noted, the constitutional county judge in Texas, in the in the Briscoe case by Judge Riesley, that officer is not a judicial officer when they are acting as the county CEO. It's an idiosyncrasy of Texas law that we have constitutional county judges who primarily are administrative and legislative officials. But this case does not involve a constitutional county judge. It involves a statutory county judge, which is like a district judge. So what that would leave would be a case in which none of the judges nor Dallas County are parties. And that's the relief we see in this appeal. That was the basis of our appellate brief. Now, I think it's time for us. So I have I have some questions. So I was well aware of the fact that there's a difference between county criminal law judges and county Judge Clay Jenkins here in Dallas. Okay, so we're well aware of that. That was noted in that opinion. It was also noted by Chief Judge Lee Rosenthal at length in the underlying district court opinions. It's not like the court had no clue that there are different kinds of county judges. But turning to the issue of them as county officers, isn't it true that the county pays them? Isn't it true that the county commissioners court would fill a vacancy rather than the governor? Isn't it true that there's a great number of things that the county commissioners interact with the county judges, not like the district judges? And I can tell you that from I mean, I have that experience. I was a state district judge in Dallas County. We were not treated the same as Dallas County court at law judges, even though we had roughly the same jurisdiction over cases, which is quite different from misdemeanor and felony. So while I would agree that a judge acting as a judge is a judge, but here, as you say, they met and made a determination that that addresses the magistrate judge's committee decision on their behalf, which the magistrate judges treat as binding, which is what Judge Cogby found. Why isn't that a county policy? Not that they're going to go make policy on how to build the roads. I get that. But that point. Thanks, Judge Haynes. And of course, there are other you and other state judges from Texas have observed this distinction through your service on the bench. The panel opinion discussed those very points that you raised, Judge Haynes, with relation to the district judges. The district judges, they serve within a county. They pass, in this case, bail schedules that were for the benefit of the magistrate judges to follow. This panel opinion holds that the district judges, when drafting bail schedules, are not serving as county officers. They're serving as state officers because they're applying state law. Those are district judges. O'Donnell was not dealing with district judges. He was dealing with statutory county court judges. Okay? And so I'm asking you, they are different. Now, I think both sets of judges can be subject to ex parte young, and that's a whole other thing. So, sovereign immunity, to me, doesn't address the issue of whether there should be an injunction. But I'm just dealing with your questioning of O'Donnell, and I'm asking you a question about that, and you're answering something else. So, would you answer my question? I do want to answer your question. As our brief explains, O'Donnell was based on a single opinion from this case, from this court's precedent, and that is the Briscoe case, in which Judge Reaveley wrote an opinion that observed that county judges in Texas have broad administrative and legal responsibilities. Briscoe was the case that O'Donnell relied on for that point. Briscoe does not stand for the point that statutory county judges have non-judicial policymaking roles. It stands for the proposition that is Judge Reaveley's opinion addresses a constitutional county judge, a county CEO. I have seen the briefing that supports the O'Donnell panel opinion and the O'Donnell district court opinion. I didn't like that briefing, but that briefing didn't make an argument that should convince this court that constitutional county court judges have the same role as statutory county court judges. Mr. Nobles, two things. Number one, is there any Fifth Circuit case regarding Texas law that has suggested the county court at law judges are county policy makers for any purpose? I read Bigford, Johnson, and Davis v. Tarrant County as saying precisely the opposite. Number two, are we dealing with prospective injunctive relief, if granted, that would fundamentally restructure Texas law in saying that judicial officers are in the executive branch of state government, which would be a very, very troubling statement. Your Honor, you're right on all those points. There is no precedent from this court that holds that statutory county judges are policy makers other than O'Donnell one, which affirmed the district court opinion relying on Briscoe. In neither O'Donnell one nor in the panel opinion in this case, was there really a deep analysis of why Briscoe should be extended to apply to statutory county judges who are created by the Texas Constitution and the Texas legislature to preside over the jurisdiction assigned them by the Yes, Your Honor. Well, the court did ask the parties to address Younger v. Harris, and I noted that your motion to dismiss in the district court, that was one of two bases for grounds to dismiss, and you argued it very thoroughly. What's your position? Yes, we did, Your Honor, and we stand on our briefing on the Younger v. Harris. Our position on Younger v. Harris, and I should say Dallas County's position, is that dismissal is proper in this case because there's no subject matter jurisdiction over the Dallas County judges or the Dallas district judges, and that is our principal first-tier argument. An abstention argument based on Younger might get us there, and particularly considering this point, and the court asked us to focus as well on Wallace v. Kern, the Second Circuit's opinion in 1975, that was one of a trilogy of cases in which the Second Circuit first held that it would be excessive interference with state criminal proceedings for federal courts to jurisdiction over state criminal prosecution. Can you tell me what page of your en banc brief addresses Younger? I don't believe that I, I don't, you know, our en banc brief cites Carter v. Hury, and I believe it's on page 30, but I'm just guessing, Your Honor, from the whereabouts of that. Carter v. Hury. You briefed it in your panel brief. That's our en banc brief. You did brief it in your panel brief. Yes, we did, Your Honor. En banc briefing is supplemental. We call en banc briefing supplemental briefing. You didn't raise it as an en banc issue. We raised it as a panel issue, that is correct, Judge Haynes. Mr. Nobles, a question for you, and I'll hope that Mr. Stone will address the same question. The question is, to what extent do you, if at all, do you say that this en banc court should overrule O'Donnell 1? To what extent should we do that, if we should, insofar as it affects the issues in this case? We believe that O'Donnell 1 should be overruled on that erroneous statement that Briscoe applies to statutory county judges, and we ask for that relief in our en banc brief, Judge Smith. Thank you. I'm out of time, but I'm happy to answer more questions. Well, let me ask you further. So, you think O'Donnell 1 was correct on the merits of the bail issue? I'll say this, the Dallas County has not appealed the procedural due process holding in the panel opinion in this on that. We do believe that the plaintiff's theories about substantive due process push the envelope too far, and they push the envelope too far as well on their municipal liability theories. We don't believe that the court should adopt either of those theories of liability under the Constitution or for municipal liability. Thank you. Mr. White? Good morning, Your Honors. I'd like to touch on something that Judge Jones brought up, and then I'd be happy to address the question you posed to me, Judge Smith. So, what in her colloquy with Mr. Katsanis, I understood that he'd responded several times that he wasn't seeking to enjoin judges as such. That comes as a relief to me, on account of the fact that the felony judges, at least according to Mr. Katsanis, to the extent that they can be involved in this case at all is only through ex parte young relief. Now, as Judge Jones had pointed out to state that felony judges here who are state officers are subject to ex parte releases to say that they're enforcing state criminal law in some sense. Of course, that isn't the case, and that causes standing problems, ex parte young problems, and younger problems all alike for similar reasons. So, just to get the ex parte young part in the beginning, part of the reason why ex parte and relief isn't available against the felony judges is precisely that the district court didn't find that felony judges in some meaningful way control magistrates. Indeed, if you look at finding 2.6, we find out the district court found that in February 2008, felony judges explicitly authorized magistrates to, quote, the authority to grant personal release or unsecured bonds. We find out later in the findings, of course, the magistrate judges nonetheless ignored that direction and continued to apply felony and misdemeanor bail schedules, but derived from that, a conclusion that the district court stated that felony judges wrote control, magistrate judges, strikes me to be wrong. More fundamentally, of course, felony judges don't actually enforce the bail schedule such as they are. Magistrates do. Enforcing the ex parte young sense of the ex parte young relief, which is a narrow exception from sovereign immunity, is only available against an officer, and this court has held this dozens of times, especially recently, who both, one, has some special connection to the enforcement of a challenge provision, and two, has threatened future enforcement in some meaningful ways, demonstrated a willingness to enforce it. And of course, given that felony judges at no point apply these bail schedules, sort of on initial bond schedule, whatsoever, they don't enforce it. So let me ask you about Judge Godbee's findings, at least that the lower level judges treat, magistrate treat, these schedules as binding. I'm not quite sure what that means in relation to what we're talking about, but the issue, it seems to me, on standing is causation, maybe to address ability as well. There's at least an implication there of something close to de facto causality, causation. Why isn't the word binding, being treated as binding, somehow grab hold of your clients? Well, two points, your honor. First, of course, that would still have to wrestle with the fact that when the felony judges specifically gave a direction to the magistrates, the magistrates flat out ignored it and continued to treat them as binding. But I think that undercuts the idea that the felony judges can one-to-one provide orders to the magistrates. Let me ask you about that first point. How do we know, is it just the face of the schedule that they're not binding? I mean, the caption of it, as well as a footnote on the district court schedules, indicates they're not binding. But I don't know if there's some sort of circumstantial evidence that we could say, Judge Godbey is relying on, or just what to make of that finding. So at this preliminary stage, I'm just concerned about what the record really supports. Well, to be fair, your honor, you're right that the actual orders on their faces are not binding just by their plain terms. Of course, I don't understand the other side to be challenging that finding by Judge Godbey, but there's a declaration in the record at 4563 suggesting, again, that the felony judges had given that direction to the magistrates that they're not, in fact, binding. So that would be one part in the record you'd find that. Mr. Stone, wouldn't it be accurate to say that if the magistrate judges are, quote, ignoring the proposed bail schedules, which, of course, this court upheld en banc in QV Rainwater, but if they're ignoring those, they're also misapplying state law, which specifically requires, among other things, consideration of the ability to pay, along with factors of That's correct, Judge Jones. Of course, Article 1715 of the Texas Code of Criminal Procedure requires individualized determinations of any given person seeking bail's ability to pay, along with other factors. And this turns back into part of the reason why Ex parte Young Relief simply isn't available. First of all, Ex parte Young Relief can't be used, this is a plaintiff's problem, to order an officer to comply with state law. So an ex parte on injunction ordering the Now, an ex parte injunction ordering the felony judges to say by disciplinary action or by firing to order the magistrates to abide by state law ends up running into a different ex parte young problem, taken up in a footnote in Larson by the Supreme Court, which makes clear that ex parte young can only be used to enjoin an official from taking an affirmative action. It can't be used to That's most recently from this court, Richardson. So even to the extent that Mr. Carrick, my friend on the other side, I apologize for my phonic inability to pronounce his name, even to the extent my friend on the other side is seeking that sort of relief by using the felony judges disciplinary mechanism over the magistrates, well, he can't receive it because he can't actually get relief that way from ex parte young that would require the performance of an affirmative discretionary act, which makes for article three purposes is injury not redressable. There's not a foreign judicial relief that would actually give him what he wants. Now, on a related note, of course, the fact that my friend on the other side is seeking in terms of relief in its broad, incredible sweep is indeed the younger problem, which I'm happy before us to concede we did not raise in our, we did not raise in a meaningful way in our on bond brief and only relevant to a footnote in our panel brief. But as the court has requested that we be prepared to speak about anyway, the, the lesson of O'Shea and of course, of, of Tartar from this court from judge wisdom and from Wallace be current in the second circuit is that when a plaintiff seeks relief, and I'm putting O'Shea here that seeks to quote ongoing audit of state criminal proceedings, that is far too intrusive of relief to be permitted under younger. Now, the only real response to that I've heard, of course, is twofold. One being that there's not appropriate or not sort of appropriate vehicle for, for raising these state issues for younger purposes. And both are mistaken. The, for purposes of actually having an adequate avenue and state in state courts for relief, we can tell from one of these named plaintiffs experiences, there is in fact, an adequate, an actual adequate state remedy. So Ms. Banks originally, and this is in the record at 412 and 4343, Ms. Banks had originally been assessed to $25,000 bonds as conditions of release. Within five days, she was able to seek a reconsideration of those bonds as released on a personal bond, a personal private bond, along with electronic ankle monitoring. That alone shows that at least for one of the named plaintiffs, there surely was an adequate, effective way for them to for pre-trial writ of habeas corpus that state law requires be docketed on the receiving judges calendar, the very first available day. Well, these are essentially make a fact finding about this one lady and so on and so forth. Isn't that more appropriately remanded to judge Godby, if we think there's a question about X or Y that we send it back in to make fact finding. Well, Your Honor, this court reviews whether or not there is in fact, for your purposes, an adequate, adequate state law. That's a, that's a question that's raised, that's answered by this court de novo, the presence of one of the elements of younger in the first place. I don't believe there's a factual dispute on whether Ms. Banks actually received modification of her bail on. I mean, the bottom line here is that the plaintiff's concern is that people are being detained pre-trial unconstitutionally under the federal constitution, not in violation of some state code, but the federal constitution. So that's the bottom line question here, right? And so then, then the bottom line is, what is the state remedy for that? And so while there might be an individual who's let out, I'm not saying that. I don't see that there is some true remedy across the board here, given the situation in Dallas. Well, Your Honor, for purposes of relief against, for purposes of relief, relief against the felony judges, of course, they're both outstanding in ex parte young issues, but, but state courts as a routine matter in both in bond hearings and ex parte or rather in, in pre-trial habeas grits do entertain issues of federal law. And I think the court can take judicial cognizance of the existence of pre-trial habeas grits. I mean, the way judge Godley sees it is these magistrate judges, you walk in and you're being accused of a violation of X, Y, Z, and they look at their little bond thing and it says a thousand dollars and they just say a thousand dollars and the person walks out the door. Now, if that's not true, then again, that's a fact finding that needs to go back. But if that's what's happening, that they're just looking at the sheet, then that is not a constitutional determination. I realize on an individual case, we wouldn't address that, but we're saying in the broad sense, this is what they're doing and this is what happened in O'Donnell and led to, to other cases. And what happened in O'Donnell is it kind of solved the problem. So if we repeal or we overrule O'Donnell, then we're going to suddenly start seeing everybody just retained because they're poor. And that's a problem, isn't it? Well, your honor should be retained just because it would be changed just because they're poor. Your honor. Of course not. I don't think, and neither does Texas law provide for that. Texas law expressly provides that judges are to consider an individual's ability to pay. I think I heard a couple of different concerns in your statement, your honor. So I want to try and speak to several of them, but, but let me know if I'm not talking to one of them. So just right off the bat, I understand you used to be veiled saying that of the motions to vacate and appeals are in fact sufficient vehicles for purposes of satisfying the younger, the younger requirement that there be an adequate remedy law. So even if there's not an adequate remedy law in the particular proceeding, which I understand that in bail hearings, especially bail reconsideration hearings, these questions can be heard, but taking the assumption you're saying about O'Donnell one side, the procedural due process requirement of a real hearing. I understand that that my, uh, my colleague, Mr. Nobles is not appealing that. So I'm just taking that as a given for a moment, given that that hearing exists and that there are these other judicial Texas state judicial devices, this court can review to Nova, whether or not those devices are adequate for purposes of younger abstention. And for purposes of younger abstentions, Supreme court's clear guidance is that federal courts must abstain from hearing claims for dispensing remedies that quote, put state courts in an ongoing audit of state criminal proceedings and make no mistake. My friends on the other side want each and every individual proceeding required explicit finding that the state has made that they've shown a compelling state interests and a necessity of detention. So that those findings can on an individualized basis be supervised by one federal district judge. Mr. Stone, I have a question about younger. In the Walker case a few years ago, judge O'Scanlan sitting by designation in the 11th circuit said younger didn't apply really for a more fundamental reason than the adequacy of the state remedy, which was, he said, one, it doesn't enjoin a prosecution looking at these bail issues and two, it doesn't interfere with the, with the actual prosecution, the defendants. And what's, what's your response to Walker? And, and would we be creating a split with Walker if we, if we went with your younger argument? No, there wouldn't be a split your honor. I understand that Walker understood the Gerstein and O'Shea components is basically allowing for procedural remedies would be permissible. You could have a procedural remedy that would not sort of go to the underlying merits. And so of course the O'Donnell one panels requirement of 48 out hearings and 48 hours and, and notice that's adequate for them. That wouldn't be substantive due process finding, which of course is a substantive rule of law that state bail hearings would have to consider. And that's on the other side, the O'Shea side of the line. So that's not why they are appealing that because judge Gobby didn't give them that either. So do you think the ruling, the district court's ruling implicates younger, or is it just what plaintiffs are asking us to do on appeal in terms of substance? This what you call their process argument is that what would implicate younger or whereas what judge God, we did implicating younger. I think the, I think the relief that I guess they're seeking is younger because their relief necessarily would put a federal court into an ongoing audit of state criminal proceedings, but not what judge God actually ruled. Well, excuse me, but the injunction itself says that weekly reports have to be made to the federal district court as to whether these on the sufficiently expedited basis. They also, and the, and if they are not then defense council or next of kin for the defendants have to be notified in connection with these weekly reports. And also that the competency of defendants to engage in bail determination can be reviewed by the federal district court. All that seems to me exactly what O'Shea characterized as an ongoing audit and O'Shea judge O'Scanlan O'Shea has not been overruled. Okay. Can we just have final with the state's position is at a bare minimum, the obligation originally coming from about judge Smith's question, but I'll stop after this one, the O'Donnell model injunctions obligation of a weekly report plainly is in fact, an ongoing audit by a federal district court over state court proceedings, the more aggressive relief that my friends on this side are seeking would be nearly an aggravation on top of that for younger purposes. Could I ask a question? Does the state believe that it would be at all appropriate for us to reach equal protection and disparate impact issue? No, your honor. In the state's view, there are several jurisdictional reasons why no relief is available against the district judges whatsoever. You wouldn't want us to address the merits of that? No, your honor. We believe that either standing or ex parte young or younger all provide independent jurisdictional bases for which the court did not have jurisdiction. Does the state have a position? Yes, the state's position is that there is no disparate impact under equal protection. Yes, your honor. To the extent this court wants to reach the merits of plaintiff's claims are plainly couched in disparate impact language. Talk about the effects of a policy, et cetera. It's not cognizable. Thank you. All right. Thank you. Mr. Zinglehart, would you add two minutes to... Mr. Voltock? Mr. Voltock, you're muted. Thank you, your honors. There were a number of questions to Mr. Carrick during the topside arguments that I've heard from the court. Starting with the sheriff. The sheriff is arguing that the panel erred in holding that she is under section 1983. Her argument is that she isn't a proper defendant because she isn't necessary to an injunction, but she hasn't offered any authority for the proposition that being necessary to an injunction has any bearing on whether a party is a proper defendant under section 1983. And the plain language of the statute shows that she is a proper defendant because she is a person who, under color of state law, causes the deprivation of federal constitutional rights. Now, Judge Wilson asked, is she actually involved in the constitutional violation? And she says that she's not, but Judge Wilson, I submit that she is. I submit she's mischaracterizing the violation as the mechanical application of a bail statement. But the violation here is pretrial detention without the findings and the procedures that we submit the constitution requires. And the sheriff certainly has a role in the detention. As the district court found, she or her agents are the ones who are actually doing the detaining. So she is covered by the plain language of section 1983. Now, Judge Salford, I think it was, asked about the 1996 amendments to section 1983. And the sheriff also invokes those. Again, her argument is inconsistent with the plain statutory language because she is not a judicial officer. And the 1996 amendment is limited to judicial officers acting in their judicial capacity. It does not in any way limit who can be a defendant under section 1983. How could she be enjoined? Oh, I'm sorry. Go ahead. And I'm not going to monopolize your time. Please know that. But the injunction issued requires a weekly report to the federal district court. If only the sheriff is being enjoined, because the sheriff is a state actor, not a county actor, who's going to make that report? Judge Jones, if I can answer, hopefully not in too much of a roundabout way, but there were a number of questions about the injunction and its content. To be clear, the injunction was taken almost verbatim from the sample injunction issued in O'Donnell 1. So Judge Dodby was attempting to follow the circuit precedent that bound him. And it does, in fact, say that the felony judges and the misdemeanor judges are enjoined. Now, it goes on to say that they are not enjoined in their judicial or legislative capacity, but the opening paragraph said, the felony judges and magistrate judges are enjoined as follows. Now, it does not then provide any specific duties on them, because I think Judge Haynes was indicating the felony judges, at least, were not parties in O'Donnell 1, and thus were not the subject of the injunction. But what the injunction says is that the judges are not enjoined in their judicial or legislative capacity. And we have not asked for that. The judicial part of it would, in fact, be proscribed by the 1996 amendments to 1983. But I want to wrap up on the sheriff. Agreeing with her argument here, Wood, as Mr. Carrick has said, has suggested creating a square circuit conflict with the Sixth Circuit's decision in McNeil. Now, the sheriff says McNeil is distinguishable, because the sheriff there supposedly was not involved in the constitutional violation necessary to an injunction. But the sheriff here also is involved in the violation, and being a necessary party is not a prerequisite. To answer your question very directly, Judge Jones, and I do apologize if it was roundabout, to the extent the sheriff is the only one enjoined, indeed, it would be the sheriff who would be making those weekly reports. If I can touch very briefly, because— Yeah, but the weekly reports are not— Can I ask a question? I'm sorry. Yeah, I'd love to ask a question, too. My question is about what is the sheriff enjoined to do? Is he to act as a pseudo-appellate court? What is he supposed to do? It doesn't make any sense to me what he's supposed to do. So, Judge Elrod, the injunction that we submitted to the district court and that we proposed, obviously not the one that the district court adopted, but our submission would be the sheriff would be enjoined from enforcing bail orders that affect wealth-based detention, unless there is a record that the requisite finding that the Constitution requires was made. So it really is just like the warrant, as Mr. Karakasenis was saying. We require, under Supreme Court precedent, Gros versus Ramirez, we expect law enforcement officers not to enforce warrants that are not facially valid. And in fact, that's so well established, Gros versus Ramirez, that qualified immunity wouldn't apply if a law enforcement official did that. Same thing here. That goes on every day in jurisdictions around the country with law enforcement officials ensuring only that a warrant is facially valid. But what is not facially valid if they're saying that we made the determination and the person doesn't give bail? They don't have to give the reasons why on an order. And Judge Auerbach, we... How would the judge know how to enforce that order? Because you can't make the state judges give reasons on their orders. I don't think. We absolutely are not asking sheriffs to sit in pseudo-appellate courts or to look behind the demonstration, the checkbox, so to speak, or whatever it is, whatever the record evidence is to the sheriff that there is the Constitution required finding any more than we expect law enforcement officers to look behind the facial validity of a warrant and weigh the evidence. Is it really probable cause? They don't do anything like that in a probable cause context. No. That's why I don't understand this because this would seem to add a requirement on the face of the order. So you'd be telling the judges they have to put something on their order. The other counsel said, no, you're not telling the judges they have to put something on their order. So how in the world would the sheriff evaluate it unless... And there's no hearing transcript that they could go listen to. So they would have to get inside the head of the magistrate judge. No, the federal... Our submission is that a federal court would simply enjoin or direct that the defendants would not engage in pretrial wealth-based detention absent the findings being made from the sheriff's perspective. That would mean the sheriff would not enforce a detention order unless it was accompanied by some form of proof, which could be nothing more than a checkmark. That's one option. That's not what would be... I have a question next. I just want to clarify that the order does not require reporting on every single bail. It requires reporting when you didn't comply with the injunction. That's what number 10 says. Which enforces the court must make a weekly report for whom a timely assessment has not been held. So it is not like all of a sudden Judge Godby is overseeing every bail proceeding, right? It's just if they're not complying with this injunction, they have to tell him. And again, that came directly out of this court's model sample injunction in O'Donnell 1. Mr. Bolchek? Yes. I appreciate you coming prepared to answer my questions on Younger Prong 3. You heard Mr. Stone's response pointing factually to Ms. Banks. I'd love a thought to you about that. And then we asked him legal questions about Prong 1 and Judge O'Scanlan's decision. He distinguishes that saying here it's a much more sweeping audit-like O'Shea request for relief. Can you answer that factual legal point? Sure. So the factual point, Judge Higginson, I think Judge Gaines, in fact, gave the answer. Mr. Stone, as I submit, fighting the district court's factual findings. The question is not whether there is one case or individual cases in which certain relief was provided. The question is, is there any clear error in the district court's unchallenged factual findings? So that'd be more than clear error. Sometimes it's plain error because it's not even challenged on appeal. Any sufficient error in the district court's factual findings that people who are detained in Dallas County have to wait weeks or months in order to have an opportunity to raise a challenge. I don't understand that. I do not understand that. We have cases on the books. For example, Shires came out of the fourth trial. Mr. Shires was arrested in September of 2016. He was denied bail. He appealed it and got a decision in December. Why can't everybody who was detained the day after, the day of, file a heavy petition and seek an appeal? No, I submit Judge Owen, Chief Judge Owen, from Middlesex and other Supreme Court cases that the pertinent question, the pertinent question is the phrase, the pertinent question is whether there is an adequate opportunity to raise the federal claim in the relevant state court proceeding. So not requiring someone to go and file a separate proceeding. In fact, this court in Pugh v. Rainwater, the decision that Gerstein v. Pugh directly affirmed, made exactly the same point. It said it had never been required in this circuit that somebody go and file a separate action. In fact, that would be inconsistent with the Supreme Court's decision in Monroe v. Pape because that sort of requirement would effectively create an exhaustion requirement for Section 1983 claims, which Monroe v. Pape and its progeny- Are you citing the panel opinion in Pugh that was vacated? No, it was affirmed by Gerstein. You're talking about the incarceration without indictment aspect of Pugh that the Supreme Court affirmed in Gerstein. Correct. In our later en banc case, which dealt solely with bail, the court never mentioned Younger or O'Shea. Correct. I'm assuming that was regarded as law of the case based on Florida law at that point. So Judge Jones, I agree with your recitation of the procedural history. The fact remains that the panel decision in Pugh that Gerstein affirmed would remain binding on a panel here. It's of course not- As regards Florida law. And besides, let me just, nevermind. Did you want to get back to my question about their response to the O'Scanlan opinion, please? Yeah. So this case is in fact just like Walker for relevant purposes because the question was a challenge to the constitutionality of pre-trial detention without particular procedures being put in place. It is just like not only Walker, but also Gerstein, as I was saying in the topside argument, it would also create a circuit conflict with the Ninth Circuit's decision in Arabalo v. Hennessey, which again rejected the same Younger defense made here. And I would point out Walker as well as Arabalo considered expressly addressed O'Shea. So they both not only expressly rested on Gerstein, but they distinguished O'Shea. I'm happy to answer any further questions. I don't want to take too much of the court's time, but I appreciate all the time it has given us. Thank you. Your promise. I want to highlight the questions of Judges Southwick and Pellegrau and Jones and just take a step back to describe the system that was challenged in this case. People were being arrested and when they were brought to court, they were told they were not permitted to speak. They were given a bail amount and they were sent to jail if they couldn't pay that amount of bail.   Evidence, which I understand is now being challenged for the first time, it's on bond bargaining, that people were even told they could do nothing about this. They were told you may not challenge this until you get a lawyer. They were told there's nothing you can do. Tell your lawyer, tell the judge. They were not being told that there was some other avenue of challenging this, right? And to get to Judge Southwick's question, this is why it's so important. Misdemeanor defendants were held incommunicado. We're not even given a lawyer or not even brought to a first court appearance for four to ten days, but as Judge Southwick pointed out, there's no way an appeal all the way up to the habeas petition, which takes over a week to be heard, even once filed, even if you were to conclude that people are required to bring a separate state proceeding. We are challenging that period of detention prior to any adequate opportunity to raise it and that is weeks or months. You are being told today for the first time in an en banc argument by Mr. Stone that Ms. Banks was released based on conditions of motion for bond reduction. They argued in their panel briefs and their en banc briefs and throughout the district court that the felony judges have no jurisdiction whatsoever to intervene in bail decisions prior to indictment. He didn't say that they were intervening. There are state procedures under the Code of Criminal Procedure for filing habeas relief and getting immediate relief. There are cases where state courts have undertaken that. And, Your Honor, the same was true in Gerstein with Florida habeas law. I'll note. Excuse me, but Gerstein is bereft of any statement about that. And if you look at Florida law, there is a habeas availability in Florida and there was when Gerstein was litigated throughout the lower court system. The point here is that people are told they have no ability to even challenge it. The harm that we are alleging in this case is that human beings are being put in a jail cell without any opportunity to ever challenge that for weeks or months. And they're told they can't even challenge it. So you're saying, essentially, you're saying the record establishes that Texas law is opposite to federal law. Because under FRAT 9, we take a motion release denial, not even with briefing. We take it on the transcripts and you can be released pending it's being heard. That is the opposite of what the record says Texas law is? Correct, Your Honor. It's not just Texas law. It's practice in Dallas County. And you are being asked to make a major ruling on young representation on the basis of factual representations that contradict the record. And they're not true. I submit, if you're considering making a ruling about adequacy of opportunity, you remand to the district court. The district court can make these findings. But what the record in this interlocutory appeal shows very clearly is that there is absolutely no opportunity for anyone who's being detained and deprived of their liberty. And it's different from federal courts in Chickenson in that in federal detention hearings, you have a full and fair and adequate opportunity for an adversarial hearing at the trial court. That's a very different situation from Texas, where you are in Dallas County, where you are told you cannot speak in court. There are no public defenders in Dallas County? Au contraire. The commissioners court was offering to make public defenders available during the pendency of this case. I don't know what happened to that. But that is the law in Dallas County. And let one other thing, more v. Sims said, I believe it's either more or Judy's around 1990 1977. The fact that the plaintiffs have not utilized these remedies does not mean that they do not exist. So why couldn't the public defenders of Dallas ensure that the prop that the problem gets corrected? Your Honor, there are factual findings on this precise question. There is no public defender at the initial hearing. People are told not to speak there. They're held in a jail. And they and there is a announcement of what their monetary bail is, then the district court found that it takes an extended delay for a public defender to even be appointed. Then the district court found once a public offender is appointed and goes over and meets with a person and they even file a motion, it takes over a week for that to be heard in this near cases. And the felony judges refuse to hear the motion until in fact, that is a factual and legal concession by the every stage of the proceeding. And so this very moment of this argument, this is the first time in the entire litigation, they have said that the felony judges have the power to intervene on the bail claim. This is the first time, everything that the premise that you just articulated in your question that you don't with respect is contradicted by the factual findings in the district. Okay. Also, if if there is a procedural barrier in the garage to the federal court, just assume arguendo. Why is why cannot all of this be done in the state court? You know, under the state, state, state constitutional law in the federal constitutional law in the state court system, if there is a federal procedural barrier here, which I'm just assuming arguendo. This gets back to this court's panel opinion in in Pew, which was affirmed by like this day here in this case, you couldn't even get a ruling on this for weeks after you're right. I'm not talking about an individual trying to get a ruling in a particular case on habeas. I'm talking about this whole lawsuit being plopped down into state court with a class action in state court. The whole issue is, I mean, there seems to be a lot of dispute about whether or not a federal court can go in and get involved in the state system. And there are all of those issues of comedy and otherwise. Why can't this whole lawsuit be plopped down into state court, up into state court, however you see it equally moved over down the street? Of course, a similar lawsuit could be filed based on Section 1983 in Texas state court. But but no Supreme Court doctrine has ever required, and it would probably be unconstitutional to require litigants to choose state court over federal court to raise federal constitutional claims. The point that we're and also, by the way, many states like Texas have doctrines that are very similar to the Younger Ascension. You can't just go into the state court without also making the same kind of adequacy show when we make a federal court. You'd be litigating the if we wanted state civil judges to issue a civil rights ruling about state bail proceedings, we'd be making the same exact arguments we're making here. We would have to show, as we did here, based on the factual record in the district court, that there is no adequate opportunity to raise it in the state criminal proceedings. And it would be the same requirement of the state law and federal law. So we could very well file a lawsuit like that in Texas state court. And indeed, we might have to if this court dismisses this case on these grounds. But I submit to you that Supreme Court statement that federal courts have an unflagging obligation to hear these civil rights cases applies. And it is particularly important where the district court has found there is no adequate opportunity to remedy the harm that you suffer prior to suffering. And the state constitution also protects these rights, right? Well, no, Your Honor. And this is an interesting question. I mean, Mississippi and Louisiana, for example, both have very clear constitutional provisions that say if you want to detain someone prior to trial, you have to prove by clear and convincing evidence that the person's a danger to the community and they're limited to certain particular situations. Texas constitution is silent on this kind of standard. We think it's consistent with Texas law that you can't be detained in these situations without that finding, but it actually isn't articulated in the Texas constitution. All of that being as it may, the point in this case is that for centuries, federal law, what makes our constitution special in this country, unique from other authoritarian bureaucracies around the world, is that the government can't detain someone without trial without making a finding that it's necessary. That is something that has been held repeatedly, not just by Judge Smith in the town and not just by the Supreme Court in Jackson, but by Kucha, but by Salerno. What you are being asked to tolerate today is a local legal system that detains thousands of people in automatic proceedings that last mere seconds without giving them any opportunity to even argue that detention isn't valid. And that is the core constitutional issue of this case and the core issue that you have the power to present. Thank you. Thank you, Judge O'Rourke. That will conclude the arguments. This case is under submission and the en banc court is in reset.